*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 13, 2026
2:29 PM

Plaintiff-Appellee,

v

No. 374374
Midland Circuit Court
LC No. 2024-009543-FH

EUGENE DAVID MEDLIN,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Defendant, Eugene David Medlin, appeals by right following his jury-trial convictions for multiple offenses, including malicious destruction of personal property between $1,000 and $20,000, MCL 750.377a(1)(b)(i), and explosives—possession of bombs with unlawful intent, MCL 750.210(2)(a). On appeal, defendant challenges his conviction for malicious destruction and his sentence for possession of explosives. For the reasons set forth in this opinion, we disagree with defendant's arguments and therefore affirm.

## I. BACKGROUND AND FACTS

On December 7, 2023, a deputy from the Midland County Sheriff's Office responded to a report of an individual causing a disturbance with a school bus. When that deputy visited the reported location, he encountered defendant, who was dressed similarly to the individual described in the report. That deputy knocked on the door of the "multi-bay garage or shop" on the property and defendant came to the door and, seeing the deputy in his uniform, "immediately shut the door in [his] face" and yelled expletive-laden language at the deputy, telling him to "[d]ie." That deputy left the scene but returned about a half hour later with another Midland deputy sheriff. Upon arrival, the deputies noticed a strong smell of chemicals and heard a raspy voice inside of the garage. As the deputies contacted the property owner, Tyron Ortiz, and two other Midland deputy sheriffs to request assistance, the deputies heard what one of them described as "a female horror movie-type scream come from inside." The deputies then opened the garage door and saw defendant approaching with a box cutter in one hand and an unidentified object in the other. The garage door closed, and the deputies repeatedly told defendant to drop the weapon in his hand, but

-1-

defendant "threw the door open" and stepped closer to the deputies yelling, "Come on." One of the deputies eventually deployed a taser that caused defendant to fall and enabled the deputies to disarm and arrest him. Following defendant's arrest, he informed the deputies that he was under the influence of various drugs, and the deputies found a trail of a "very flammable" substance, which had caused the strong chemical odor, a truck in the garage that had been scratched on all sides, and a lighter in defendant's pocket.

The following day, defendant was charged with the possession-of-explosives count alluded to above, as well as two counts of assault with a dangerous weapon, MCL 750.82, and four counts of assaulting/resisting/obstructing a police officer, MCL 750.81d(1), as a habitual offender—fourth offense, MCL 769.12. On January 16, 2024, a preliminary examination was held in the district court and Ortiz was called as a witness. Before the preliminary examination began, the prosecution stated that it had informed defense counsel a few minutes prior that it would be requesting to add a felony charge for malicious destruction of personal property between $1,000 and $20,000, given what the prosecution believed to be over $1,000 of damage to a truck on the property at which the incident occurred. During the preliminary examination, Ortiz testified that he had been allowing defendant to stay at his automotive paint and detail shop, and that Ortiz was finishing working on a truck inside the shop that he had recently sold for $23,500. Ortiz further stated that the truck "had $20,000 worth of paint on it," that he had spent about $3,000 on clear coating to protect the paint, and that the truck had no scratches on it before the incident, but that following the incident, it had looked like someone had taken "a razorblade" or similar item around the truck and damaged it. Ortiz testified that it would cost "way over" $10,000 to repair the damage. Defendant cross-examined Ortiz. The following day, an amended information was filed adding the malicious-destruction charge.

Defendant's jury trial was held on October 28 and 29, 2024. Relevant to this appeal, the prosecution had intended to call Ortiz as a witness, but at the beginning of the second day of trial, the prosecution informed the trial court that Ortiz was not present to testify and requested that Ortiz be deemed unavailable and that his preliminary examination testimony be admitted. The prosecution explained that Ortiz's gallbladder was removed during emergency surgery the prior week and that it received a doctor's note on October 25, 2024, indicating that Ortiz "was being treated with opioids as part of his post-operative pain regimen" and "recommend[ing] that [Ortiz] refrain from court proceedings . . . until he has recovered, which [the doctor] anticipated would be three or four weeks." The prosecution further expounded that although Ortiz had indicated in their conversation on October 25, 2024 that he wanted to be present at trial, Ortiz was not present on the first day of trial, and that when the prosecution contacted Ortiz midday on the first day of trial, Ortiz "indicated he had been throwing up all night and was . . . having some health issues and intended to" seek medical attention. The prosecution noted that it had not heard from Ortiz since that conversation on the first day of trial. Over an objection from defense counsel, the trial court admitted Ortiz's preliminary examination testimony into evidence, reasoning that Ortiz was unavailable under MRE 804(a)(4) given his "physical infirmity." Defendant was ultimately convicted of all charged offenses.

At sentencing, the trial court highlighted defendant's extensive criminal history, explaining how defendant has "been though the system over and over and over again" given his "22 prior convictions," and circumstances of defendant's offense demonstrative of defendant's "inten[t] to cause serious injury." The trial court also described how defendant was "fighting, and fighting,

and fighting, doing everything [he] c[ould] to cause harm and chaos" and the stress imposed on the police officers, noting that defendant "put them through all that." On the possession-of-explosives conviction, the applicable sentencing guidelines range was 50 to 200 months, and the trial court imposed a sentence of 180 to 480 months. Defendant also received concurrent sentences of 48 to 180 months on the two counts of assault with a dangerous weapon, 46 to 180 months on the four counts of assaulting/resisting/obstructing a police officer, and 58 to 180 months for malicious destruction of property.

Defendant now appeals.

## II. STANDARD OF REVIEW

We review challenges to a trial court's admission of evidence for an abuse of discretion, which occurs when the trial court's "decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). "Preliminary issues of law, including the interpretation of the rules of evidence and the effect of constitutional provisions, are reviewed de novo." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). And more specifically, "[t]he constitutional question whether defendant was denied h[is] constitutional right to confront the witnesses against h[im] is reviewed de novo." *Id.* Further, "[w]e review the trial court's findings of fact for clear error," *People v Carson*, ___ Mich ___, ___; ___ NW3d ___ (2025); slip op at 10, which exists when we are "left with the definite and firm conviction that a mistake has been made[,]" *People v Norfleet*, 317 Mich App 649, 667 n 11; 897 NW2d 195 (2016) (quotation marks and citation omitted).

Regarding defendant's challenge to his sentence, "[w]e review the reasonableness of a sentence for an abuse of the trial court's discretion[,]" *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017), and the factual findings underlying a sentencing decision for clear error, *People v Lampe*, 327 Mich App 104, 125-126; 933 NW2d 314 (2019).

## III. ANALYSIS

### A. ORTIZ'S PRELIMINARY EXAMINATION TESTIMONY

Defendant first challenges the admission of Ortiz's preliminary examination testimony as a violation of the Confrontation Clause and the rule against hearsay. We conclude that the trial court did not abuse its discretion in admitting this testimony.

The Confrontation Clause of the Sixth Amendment to the United States Constitution assures criminal defendants the right "to be confronted with the witnesses against [them.]" US Const, Am VI. "The United States Supreme Court has held that the introduction of out-of-court testimonial statements violates the Confrontation Clause . . . unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant." *People v Nunley*, 491 Mich 686, 698; 821 NW2d 642 (2012), citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). The Court has also more specifically explained that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause when the defendant's counsel is not "significantly limited in any way in the scope or nature of his cross-examination of the witness . . . at [a] preliminary hearing." *California v Green*, 399 US 149, 165-

166; 90 S Ct 1930; 26 L Ed 2d 489 (1970); see also *People v Garland*, 286 Mich App 1, 7-8; 777 NW2d 732 (2009) (finding no Confrontation Clause violation regarding admission of preliminary examination testimony). Notably, "[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *People v Sardy (On Remand)*, 318 Mich App 558, 564; 899 NW2d 107 (2017), quoting *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988).

Under the Michigan Rules of Evidence, hearsay, "a statement that[] the declarant does not make while testifying at the current trial or hearing[] and that a party offers in evidence to prove the truth of the matter asserted in the statement," MRE 801(c), is generally inadmissible, see MRE 802. MRE 804(b)(1), however, excludes former testimony given by an unavailable witness from the general prohibition against the admission of hearsay. For hearsay to be admitted under this exception, the witness must be deemed "unavailable" as that term is described in MRE 804(a), and the testimony at issue must have been "given as a witness at a trial or hearing whether given during the current proceeding or a different one" and be "now offered against a party who had . . . an opportunity and similar motive to develop it by direct, or cross, or redirect examination[,]" MRE 804(b)(1). In deciding whether a party had a similar motive to develop testimony at a prior proceeding, this Court has considered:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact . . . cross-examine[d] the witness (both the employed and available but forgone opportunities). [*People v Farquharson*, 274 Mich App 268, 278; 731 NW2d 797 (2007) (quotation marks and citation omitted).]

In short, this Court has held that "[f]ormer testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *Garland*, 286 Mich App at 7. Here, defendant contends that neither of these prerequisites was satisfied. We disagree.

First, defendant argues that insufficient evidence supported the trial court's finding that Ortiz was unavailable due to physical infirmity under MRE 804(a)(4). MRE 804(a)(4) provides that a declarant is unavailable as a witness when that declarant "cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness[.]" Our Supreme Court has explained that " '[i]nfirmity' is defined as 'the quality or state of being infirm; lack of strength[,]' " and in turn, " 'infirm' is defined as 'feeble or weak in body or health, . . . because of age." *Duncan*, 494 Mich at 725 (citation omitted).

We find no error in the trial court's conclusion that Ortiz was unavailable under MRE 804(a)(4). The parties do not dispute the prosecution's representations that Ortiz underwent invasive, emergency surgery just the week before trial, was being treated with opioids, and suffered

health issues, including "throwing up all night," on the first day of trial.[1]  Further, Ortiz was at most just over one week into, per his doctor, a three- to four-week recovery period.  Ortiz's health issues support a finding that Ortiz was unable to be present at trial due to a then-existing infirmity.  See MRE 804(a)(4); *Duncan*, 494 Mich at 725; *Garland*, 286 Mich App at 7 (holding that the trial court did not clearly err in deeming a witness unavailable when she "was experiencing a high-risk pregnancy" and was unable to travel to Michigan from her out-of-state residence to testify); *People v Gross*, 123 Mich App 467, 470; 332 NW2d 576 (1983) (concluding that a witness "was unable to testify due to physical infirmity" when the witness "had a suspected aneurysm and had submitted himself to a lumbar puncture"); *People v Murry*, 106 Mich App 257, 260; 307 NW2d 464 (1981) (finding that "[t]he evidence clearly established that the witness was physically or mentally infirm" when the witness was of advanced age, "hard of hearing," "extremely upset about the possibility of retestifying, and had suffered from hypertension, recurrent pneumonia, and myocardial ischemia").  Indeed, requiring the prosecution to attain even more evidence of infirmity from a witness who had undergone such a significant medical procedure and evidently continued to suffer complications seems hardly feasible, let alone reasonable, under the circumstances presented here.  We therefore cannot say that the trial court erred in finding Ortiz unavailable under MRE 804(a).

Next, defendant argues that Ortiz's preliminary examination testimony was erroneously admitted into evidence because "[t]he defense did not have a full and fair opportunity to cross-examine Ortiz."  After defendant had received initial discovery materials, and a few minutes before Ortiz's preliminary examination, the prosecution informed defense counsel that the malicious-destruction charge would be added.  Ortiz then testified at length during his direct examination regarding the value of the truck, including the recent sale price of the truck, the cost of supplies Ortiz used to paint the truck, and the estimated cost to repair the damage to the truck defendant caused.  And then defense counsel cross-examined Ortiz about various other matters, but did not question him about the amount of damage to the truck.

On this record, we are unpersuaded by defendant's argument that he was deprived of the opportunity to effectively cross-examine Ortiz for purposes of the Confrontation Clause.  When defense counsel cross-examined Ortiz, counsel was aware that the amount of damage to the truck was pertinent to the malicious-destruction charge and the prosecution had elicited testimony supporting a finding that defendant caused over $1,000 of damage to the truck.  Although defense counsel chose not to capitalize on the opportunity to cross-examine Ortiz as to the damage to the truck, a violation of the Confrontation Clause occurs only when a defendant has no opportunity to cross-examine, not when a defendant chooses not to take advantage of that opportunity.  See *Sardy*, 318 Mich App at 564 (noting that the Confrontation Clause does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish").  And defendant cites no caselaw indicating that the Confrontation Clause is violated when counsel had an opportunity to conduct a full cross-examination at a prior hearing as was the case here.  Similarly, under MRE 804(b)(1), defendant evidently had an opportunity and similar motive to develop

---

[1] "[B]ecause the issue of unavailability was a preliminary question for the trial court to decide before the admission of evidence, the rules of evidence did not apply."  *Garland*, 286 Mich App at 7, citing MRE 104(a).  Here, as in *Garland*, "[t]he trial court had no reason to disbelieve the prosecution's representation."  *Id*. at 8.

Ortiz's testimony in cross-examination given that at the preliminary examination and at trial, defendant faced a similar risk and had an identical interest in casting doubt upon the extent of the damage to the truck. See *Farquharson*, 274 Mich App at 278.

In sum, the admission of Ortiz's preliminary examination testimony violated neither the Confrontation Clause nor MRE 804. See *Garland*, 286 Mich App at 7. The trial court therefore did not abuse its discretion in admitting this evidence. See *Duncan*, 494 Mich at 722-723.

## B. DEFENDANT'S SENTENCE

Defendant next contends that his within-guidelines sentence was disproportionate in light of his circumstances and the circumstances of his offense. We are unpersuaded.

A sentence constitutes an abuse of discretion when it "violat[es] the 'principle of proportionality,' which requires that a sentence be proportionate to the seriousness of the offense and the circumstances of the offender." *People v Brcic*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket Nos. 362727 and 366230); slip op at 10 (quotation marks omitted). "Factors that may be considered by a trial court under the proportionality standard include, but are not limited to: '(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines . . . .' " *People v Ventour*, 349 Mich App 417, 430; 27 NW3d 660 (2023), quoting *Lampe*, 327 Mich App at 126. Further, a trial court "must always bear in mind" the "four basic sentencing considerations first identified in *People v Snow*, 386 Mich 586, 592, 594; 194 NW2d 314 (1972)[:] . . . (1) reformation of the offender; (2) protection of society; (3) disciplining of the wrongdoer; and (4) deterrence of others from committing like offenses." *People v Copeland*, 350 Mich App 577, 584-585; 34 NW3d 9 (2024) (citation and quotation marks omitted). "A within-guidelines sentence carries a rebuttable presumption of proportionality[,]" and "[t]he defendant bears the burden of demonstrating that their within-guidelines sentence is . . . disproportionate." *Brcic*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted). "A defendant may overcome the presumptive proportionality of a within-guidelines sentence by 'present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate.' " *Id.* (alterations in original), quoting *Ventour*, 349 Mich App at 430. " 'Unusual' means 'uncommon, not usual, rare.' " *Ventour*, 349 Mich App at 430 (citation omitted).

On appeal, defendant asserts that the trial court ignored his substance abuse and mental health disorders and relatedly highlights the possibility that his actions constituted "an attempt to commit 'suicide by cop.' " The trial court noted, however, the possibility that defendant "intended to die" and the court's discussion illustrates its attention to other pertinent considerations, such as the seriousness of defendant's actions and the *Snow* factors of protecting society and disciplining the wrongdoer, which the court concluded supported a longer sentence within the guidelines range. See *Ventour*, 349 Mich App at 430; *Copeland*, 350 Mich App at 584-585. Indeed, the trial court's findings that defendant "d[id] everything [he] c[ould] to cause harm and chaos" and "intended to cause serious injury" supported prioritizing these factors. Defendant also argues against the trial court's explicit consideration of his criminal history because his prior convictions were already

-6-

factored into the guidelines range by the scoring of many of the prior record variables.[2]  But the trial court's discussion illustrates that it considered defendant's criminal history as relevant to defendant's potential for rehabilitation, a factor not otherwise considered by the sentencing guidelines.  See *Walden*, 319 Mich App at 352-353 (citation omitted).  Further, as this Court has described, considering the degree to which defendant may be reformed with the benefit of hindsight is permissible "because the principle of proportionality requires sentencing courts to tailor their sentences to each defendant's individual circumstances."  *Copeland*, 350 Mich App at 588-589.  Thus, the trial court did not err in accounting for defendant's criminal history in considering whether defendant "ha[s] actually demonstrated the capacity for reform."  *Id.* at 588.  Further, and most fundamentally, none of the challenges defendant raises to his sentence on appeal "present any unusual circumstances sufficient to overcome the presumption of proportionality."  *Ventour*, 349 Mich App at 430.  For these reasons, defendant has not overcome the burden of demonstrating that his within-guidelines sentence is disproportionate.

Affirmed.

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin

---

[2] Defendant also asserts that the guidelines range was too wide, providing the trial court no guidance in sentencing him.  Defendant, however, fails to cite any legal support for this proposition, citing only a report for the assertion that broad guideline ranges give trial courts "undefined discretion."  "Defendant's failure to cite any supporting legal authority constitutes an abandonment of this issue."  *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001).  For "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."  *People v Johnson*, 315 Mich App 163, 199; 889 NW2d 513 (2016) (quotation marks and citation omitted).  Therefore, to the extent defendant takes issue with the guidelines range he was assessed as a whole, we deem this issue abandoned and decline to consider it.